# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00048-MR

| | |
|---|---|
| **RONNIE DALE WHITENER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **RUTHERFORD COUNTY DETENTION** ) | |
| **CENTER, et al.,** ) | **ORDER** |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of the *pro se*

Complaint. [Doc. 1]. Several Motions are also pending. [Docs. 4, 7, 8, 14,

15]. The Plaintiff is proceeding *in forma pauperis*. [Doc. 13].

The *pro se* Plaintiff filed this action pursuant to 42 U.S.C. § 1983, the

Federal Tort Claims Act ("FTCA"), and North Carolina law,[1] addressing

incidents that allegedly occurred while he was a pretrial detainee at the

Rutherford County Detention Center.[2] [Doc. 1]. The Plaintiff names as

Defendants: the Rutherford County Detention Center ("RCDC"); Chris

_____

[1] The Court also liberally construes the Complaint as raising a claim pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-171, 110 Stat. 1936 (1996).

[2] The Plaintiff is presently incarcerated in the Tennessee Department of Corrections.

Francis, the Rutherford County Sheriff ("Sheriff Francis"); John Doe 1, an RCDC administrator; John Doe 2, an RCDC captain; John Doe 3, an RCDC sergeant; John Does 4 and 5, RCDC correctional officers; RCDC's Health Care Provider; Jane Doe 1, the RCDC medical administrator; Jane Doe 2, the RCDC medical director; Jane Doe 3, an RCDC physician; and Jane Doe 4, an RCDC nurse practitioner. [Id.]. In his Complaint, the Plaintiff seeks a declaratory judgment, compensatory and punitive damages, a jury trial, the costs of this action, and any other relief the court deems just, proper, and equitable. [Id. at 20-21].

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.

2

_Neitzke v. Williams_, 490 U.S. 319, 327-28 (1989). Furthermore, a _pro se_ complaint must be construed liberally. _Haines v. Kerner_, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. _Weller v. Dep't of Soc. Servs._, 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Federal Tort Claims Act

The Plaintiff appears to assert claims under the Federal Tort Claims Act ("FTCA"). [_See_ Doc. 1 at 2]. The FTCA affords a limited, conditional waiver of sovereign immunity by the United States government for the torts of Federal government employees committed within the scope of their employment. _See_ 28 U.S.C. §§ 2671 _et seq._; _see also_ _Muth v. United States_, 1 F.3d 246, 249 (4th Cir. 1993).

The incidents in this lawsuit allegedly occurred at RCDC and all of the Defendants appear to be county employees. No federal actors are involved whatsoever, and accordingly, the FTCA does not apply. The Plaintiff's claims pursuant to the FTCA are therefore dismissed with prejudice as frivolous and for failure to state a claim upon which relief can be granted.

3

**B. HIPAA**

The Plaintiff alludes to his right to have medical information kept private, and alleges that "Defendants in this action shared Plaintiff's medical records" in violation of his constitutional rights. [Doc. 1 at 17].

To the extent that the Plaintiff attempts to assert a claim under HIPAA, it is dismissed because HIPAA does not create a private right of action. Payne v. Taslimi, 998 F.3d 648 (4th Cir. 2020). Accordingly, to the extent that the Plaintiff attempts to assert a HIPAA claim, such claim is dismissed with prejudice.

**C. Section 1983**

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

**1. RCDC**

The Plaintiff names as a Defendant the RCDC, the jail facility at which he was held in pretrial detention. [Doc. 1 at 2].

In order to successfully allege a violation of 42 U.S.C. § 1983, the plaintiff must allege that a "person" acting under the color of state law violated the plaintiff's constitutional rights. Rule 17(b) of the Federal Rules of Civil

4

Procedure states that a party's capacity to be sued is determined by the law of the state in which the District Court is held. Under North Carolina law, unless a statute provides to the contrary, only persons in being may be sued. McPherson v. First & Citizens Nat. Bank of Elizabeth City, 240 N.C. 1, 18, 81 S.E.2d 386 (1954). Jails and detention centers, therefore, may not be sued. Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) ("Claims under § 1983 are directed at "persons" and the jail is not a person amenable to suit."). The RCDC is not a person under § 1983, and accordingly, the § 1983 claims against it are dismissed with prejudice.

### 2. RCDC's "Healthcare Provider"

The Plaintiff names as a Defendant the Healthcare Provider which allegedly employed Jane Does 1 through 4. [See Doc. 1 at 4].

In Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that a municipal corporation cannot be saddled with section 1983 liability via *respondeat superior* alone. This holding as equally applicable to the liability of private corporations. Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982).

The Plaintiff alleges that Jane Does 1 through 4 acted improperly in their care of Plaintiff. [Doc. 1 at 5-7, 9]. However, the Plaintiff alleges no specific conduct by the "Healthcare Provider" or any custom or policy of the

5

"Healthcare Provider" that resulted in a deprivation of his constitutional rights. The Plaintiff essentially seeks to hold the "Healthcare Provider" liable because it alleged employed the individuals who made decisions with which he disagrees. Such an allegation is insufficient to state a claim against a private company under § 1983. See Powell, 678 F.2d at 505–06 (dismissing a claim against the private employer of a security guard under § 1983). The claims against RCDC's "Healthcare Provider" are therefore dismissed without prejudice.

### 3. Official Capacity Claims

The Plaintiff asserts claims against Sheriff Francis and the other RCDC employees in their official capacities. [Doc. 1 at 2-5].

The claims against the deputy Defendants in their official capacities are duplicative of the claims against Sheriff Francis. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); Carpenter v. Trammel, No. 1:18-CV-00016-MR-WCM, 2019 WL 2088424, at *5 (W.D.N.C. May 13, 2019). Accordingly, the official capacity claims against the deputy Defendants are dismissed.

As for the official capacity claim against Sheriff Francis, suits against sheriffs in their official capacity are in substance claims against the office of the sheriff itself. Gannt v. Whitaker, 203 F.Supp.2d 503, 508 (M.D.N.C. Feb.

6

26, 2002).  To succeed on such a claim, a plaintiff must allege that a Sheriff's Office policy or custom resulted in the violation of federal law.  See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978) (holding that in an official capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law); Oklahoma City v. Tuttle, 471 U.S. 808, 818-20 (1985) (discussing same).

Here, the Plaintiff has not adequately alleged that a sheriff's office policy or custom played a part in the alleged violations of federal law. Therefore, the Plaintiff's claim against Sheriff Francis in his official capacity will be dismissed without prejudice.

### 4.    Individual Capacity Claims

### i.    Deliberate Indifference to a Serious Medical Need

The Plaintiff appears to allege that Jane Doe nurse practitioner and Jane Doe physician were deliberately indifferent to a serious medical need by misdiagnosing the Plaintiff and prescribing treatment that was inconsistent with his medical records, and that Sergeant John Doe and the two John Doe correctional officers were deliberately indifferent to a serious medical need by refusing to take Plaintiff to the Emergency Room for a second opinion when the Plaintiff expressed disagreement with medical staff's alleged misdiagnosis.  [Doc. 1 at  6-7].

The Eighth Amendment[3] encompasses a right to medical care for serious medical needs.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs.  Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994).  However, mere negligence or malpractice does not violate the Eighth Amendment.  Miltier,

---

[3] Because the Plaintiff was a pre-trial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment rather than the Eighth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983). However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims.  See, e.g., Mays v. Sprinkle, 992 F.3d 295 (4th Cir. 2021); Young v. City of Mount Ranier, 238 F.3d 567 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692 (4th Cir. 1999); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).

896 F.2d at 852. Further, "mere '[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Wright v. Collins, 766 F.2d 841, 840 (4th Cir. 1985)).

To establish a deliberate indifference claim against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to prison physicians' misconduct. Miltier, 896 F.2d at 854. Because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deem necessary and appropriate for the prisoner. Id.; see Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (finding that, if prison officials had contradicted medical professionals' instructions, "they might have incurred liability for interfering with [the inmate's] treatment."); Pickens v. Lewis, 2018 WL 2187051 (W.D.N.C. May 11, 2018) (holding that prison officials without medical training are "not responsible for determining the course of treatment or for overruling the opinions of those professionals") (quotations and citations omitted).

Here, the Plaintiff has failed to state a deliberate indifference claim against the Jane Doe nurse practitioner and Jane Doe physician because the Plaintiff has alleged only his disagreement with their diagnosis and prescribed treatment. Such allegations do not rise to the level of a constitutional violation. Further, the Plaintiff has failed to state a deliberate indifference claim against the John Doe sergeant and John Doe correctional officers because these Defendants are non-medical correctional personnel who were entitled to rely on the medical staff's expertise, diagnosis, and treatment plan. Therefore, the Plaintiff's claims of deliberate indifference to a serious medical need will be dismissed without prejudice.

### ii.     Unwanted Medical Treatment

The Plaintiff alleges that he told Sergeant John Doe and the two John Doe correctional officers that he was refusing the medical care prescribed by the Jane Doe nurse practitioner, *i.e.* Tylenol, a liquid diet, and 10 days of segregation for observation, but that Sergeant John Doe and the John Doe correctional officers would not accept the refusal and forced him to comply.[4] [Doc. 1 at 6].

---

[4] The Plaintiff does not appear to allege that he expressed his refusal to the Jane Doe nurse practitioner or Jane Doe physician.

"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990). This liberty interest survives conviction and incarceration. King v. Rubenstein, 825 F.3d 206, 222 (4th Cir. 2016); see Washington v. Harper, 494 U.S. 210, 221–22 (1990) (recognizing an individual's "significant liberty interest in avoiding the unwanted administration" of a specific form of medical treatment); Hogan v. Carter, 85 F.3d 1113, 1116 (4th Cir. 1996) (en banc) (citing Harper, 494 U.S. 221–22). In this context, prison officials may override this right when treatment is "reasonably related to legitimate penological interests." Harper, 494 U.S. at 223 (citing Turner, 482 U.S. at 89). "This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review." Id. (citation omitted).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Court concludes that the Plaintiff has stated a due process claim sufficient to pass initial review against Sergeant John Doe and the two John Doe correctional officers for forcing him to undergo unwanted medical treatment. Accordingly, this claim will be allowed to proceed at this time.

### iii. Excessive Force

The Plaintiff appears to allege that Sergeant John Doe used excessive force while escorting the Plaintiff to segregation, and that the two John Doe correctional officers failed to intervene in these uses of excessive force. [Doc. 1 at 7-9].

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely and objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force;

the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has stated an excessive force claim against Sergeant John Doe, and a failure to intervene claim against the two John Doe correctional officers. These claims therefore survive initial review.

### iv.  Retaliation

The Plaintiff appears to allege that Sergeant John Doe and the John Doe correctional officers used excessive force against him in retaliation for Plaintiff expressing his disagreement with medical staff's diagnosis and treatment plan.  [Doc. 1 at 7-9].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right."  Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000).  Prison officials may not retaliate against an inmate for exercising a constitutional right.  See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978).  In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely

affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Court concludes that the Plaintiff has stated a retaliation claim against Sergeant John Doe and the two John Doe correctional officers that is sufficient to survive initial review.

## v. Conditions of Confinement

The Plaintiff alleges that: he was placed in segregation for nearly two weeks without due process for medical observation and for refusing medical and correctional orders, and that he was deprived of "decent conditions." [Doc. 1 at 14].

"[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated." Tate v. Parks, 791 F. App'x 387, 390 (4th Cir. 2019) (citing Bell v. Wolfish, 441 U.S. 520, 535

(1979)).  An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment."  Id.  (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)).  "To prevail on such a claim, a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred."  Id. (citing Williamson, 912 F.3d at 178).

The Plaintiff alleges that he was placed in segregation for two weeks for medical observation by the Jane Doe nurse and Jane Doe physician, and that the segregation was also punishment for disagreeing with the medical treatment plan and refusing correctional personnel's orders.  [Doc. 1 at 17-18].  These allegations are insufficient to state a plausible due process claim, as a medical segregation order is a legitimate nonpunitive objective that preceded his disagreement and attempted refusal for which he alleges he was punished without due process.  Further, the Plaintiff's allegation that his right to "decent conditions" was violated is too vague and conclusory to state a § 1983 claim.   The Plaintiff's allegations that the conditions of his confinement violated due process are therefore dismissed.

## 5. Supplemental Jurisdiction

The Plaintiff raises a number of claims under North Carolina law. Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims ... within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims ... derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. of Columbia, 138 S.Ct. 594, 595 (2018); see § 1367(c)(3). A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction. See § 1367(c)(1), (2), and (4).

### i. Assault and Battery

The Plaintiff appears to assert that Sergeant John Doe and the two John Doe correctional officers committed an assault and battery by making him fear that they were about to harm him, and then by using excessive force against him. [Doc. 1 at 12].

16

North Carolina assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow.  See generally Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981).  While a civil action for assault is available under North Carolina law against one who uses force for the accomplishment of a legitimate purpose such as justifiable arrest, the use of such force under the given circumstances must be excessive for the claimant to prevail.  Myrick v. Cooley, 91 N.C.App. 209, 215, 371 S.E.2d 492, 496 (1988).  "The question of '[w]hether an officer has used excessive force is judged by a standard of objective reasonableness.'"  Jordan v. Civil Service Bd., 153 N.C.App. 691, 698, 570 S.E.2d 912, 918 (2002) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4ᵗʰ Cir. 2002)).

The Plaintiff has plausibly stated assault and battery claims under North Carolina law, and these claims involve the same incidents as the excessive force and failure to intervene claims that have passed initial review.  The Court will, accordingly, exercise supplemental jurisdiction over Plaintiff's assault and battery claims at this time.

### ii.  Medical Negligence

The Plaintiff appears to assert a medical malpractice claim against the Jane Doe nurse practitioner and Jane Doe physician.  [Doc. 1 at 12].

17

Under North Carolina law, the elements of medical negligence are: "(1) the standard of care, (2) breach of the standard of care, (3) proximate causation, and (4) damages." Turner v. Duke Univ., 325 N.C. 152, 162, 381 S.E.2d 706 (1989).

Assuming *arguendo* that the Plaintiff has plausibly alleged a medical negligence claim under North Carolina law, the Court declines to exercise supplemental jurisdiction over it at this time. The medical negligence claim against the Jane Doe nurse practitioner and Jane Doe physician is not adequately related to the § 1983 claims that have passed initial review against the John Doe sergeant and two John Doe correctional officers. Further, such claim would require extensive expert testimony of an entirely different nature than that needed to adjudicate constitutional issues. It is likely, in this case, that the medical malpractice claim would substantially predominate over the claims over which the Court has original jurisdiction. See, e.g., De La Garza-Montemayor v. Hassoun, No. CIV-18-1120-HE, 2019 WL 923744, at *4 (W.D. Okla. Jan. 7, 2019), *report and recommendation adopted*, No. CIV-18-1120-HE, 2019 WL 921459 (W.D. Okla. Feb. 25, 2019) (declining supplemental jurisdiction over prisoner's state-law medical malpractice claims that involved a different set of defendants, circumstances, and facts from the § 1983 excessive force claim and would substantially

predominate the case). Accordingly, the Plaintiff's medical negligence claims are dismissed without prejudice to refiling such claims in a proper state forum.

### iii. Negligence

The Plaintiff alleges that Defendants Sergeant John Doe and the two John Doe correctional officers failed to use reasonable care to protect him from physical assault and from the Jane Doe nurse practitioner and Jane Doe physician's medical malpractice. [Doc. 1 at 11-12].

North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Blackwell v. Hatley, 202 N.C.App. 208, 212, 688 S.E.2d 742, 746 (2010); Camalier v. Jeffries, 340 N.C. 699, 460 S.E.2d 133, 136 (1995). "Actionable negligence is the failure to exercise the degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." Hart v. Ivey, 332 N.C. 299, 420 S.E.2d 174 (1992) (internal citations omitted).

The Plaintiff has minimally stated a negligence claim against Sergeant John Doe and the two John Doe correctional officers with regard to the

excessive force incidents.  However, the negligence claim based on Jane Doe nurse practitioner and Jane Doe physician's medical care will be dismissed because no claim of deliberate indifference to a serious medical need has passed initial review.  The Court will, accordingly, exercise supplemental jurisdiction over the Plaintiff's negligence claim based on the alleged use of excessive force at this time.

### iv.    Intentional Infliction of Emotional Distress

The Plaintiff appears to allege that Sergeant John Doe and the two John Doe correctional officers made him "upset" and caused him pain and emotional distress by engaging in the purposefully outrageous acts, and that he is "currently on a medication … for emotional stress."  [Doc. 1 at 12].

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress."  Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981) (citations and quotation marks omitted). The severe emotional distress required for intentional infliction of emotional distress is "any emotional or mental disorder, such as for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  Piro v. McKeever, 245

N.C. App. 412, 416, 782 S.E.2d 367, 371 (2016), *aff'd* 369 N.C. 291, 794 S.E.2d 501 (citations omitted).  Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by a decent society."  <u>Shreve v. Duke Power Co.</u>, 85 N.C. App. 253, 257, 354 S.E.2d 357, 359 (1987) (citation and quotations omitted).

The Plaintiff's allegations that he was upset and currently takes medication for emotional stress are too vague and conclusory to state a plausible claim for the intentional infliction of emotional distress.  Assuming *arguendo* that the Defendants' actions were extreme and outrageous, the Plaintiff has failed to sufficiently allege that their actions were intended to cause, and did cause, a recognized severe and disabling emotional disorder.  This claim is therefore dismissed without prejudice.

### 6.  Pending Motions

The Plaintiff has filed several *pro se* motions that will be addressed in turn.

First, the Plaintiff has filed a Motion to Appoint Counsel [Doc. 4].  There is no absolute right to the appointment of counsel in civil actions such as this one.  Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel.  <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th

Cir. 1987). The Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel and Plaintiff's request is therefore denied.

Second, Plaintiff has filed Requests for Admissions [Doc. 7] and Request for Production of Documents [Doc. 8] that have been docketed as Motions. These filings appear to be routine discovery requests that are premature and have been misdirected to the Court. See LCvR 26.1 ("Official Court-ordered and enforceable discovery does not commence until issuance of the scheduling order."); LCvR 26.2 ("The parties shall not file any initial disclosures, designations of expert witnesses and their reports, discovery requests or responses thereto, deposition transcripts, or other discovery material unless: (1) directed to do so by the Court; (2) such materials are necessary for use in an in-court proceeding; or (3) such materials are filed in support of, or in opposition to, a motion or petition."). The Motions seeking discovery will therefore be denied. Discovery will commence upon the Court's entry of a pretrial scheduling order.

Third, the Plaintiff has filed a "Motion to Add Certificate in Support of *In Forma Pauperis*" [Doc. 14]. This Motion is moot because Plaintiff has already been granted leave to proceed *in forma pauperis*. [See Doc. 13].

Fourth, the Plaintiff has filed a Motion [Doc. 15] in which he asks the Court to allow the Clerk to update him on the case's status. He also appears to request a copy of the "applicable rules and procedures" referred to in the Court's Order of Instructions. [Doc. 10]. The Plaintiff's request for a case status report from the Clerk is moot, as this Order has addressed the issue. As to the Plaintiff's request for "applicable rules and procedures," this request is denied insofar as the Plaintiff appears to seek legal advice from the Court. Moreover, the Court is not responsible for providing *pro se* litigants with legal materials. However, the Court will direct the Clerk to provide Plaintiff with a copy of this case's docket sheet and the Court's Local Rules as a courtesy.

## IV. CONCLUSION

In sum, the Plaintiff's claims for the imposition of unwanted medical treatment in violation of due process, the use of excessive force and failure to intervene, and retaliation have passed initial review against Sergeant John Doe and the two John Doe correctional officers. The Court will exercise supplemental jurisdiction over the Plaintiff's claims of assault and battery negligence against these Defendants pursuant to North Carolina law. The Plaintiff's claims pursuant to FTCA and HIPAA, and the claims against RCDC, are dismissed with prejudice; the remaining claims are dismissed without prejudice.

The Court will allow the Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the matter will proceed only against Defendants Sergeant John Doe and the two John Doe correctional officers as set forth above. The Plaintiff's pending Motions are denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The claims against Sergeant John Doe and the two John Doe correctional officers have passed initial review for the imposition of unwanted medical care in violation of due process, the use of excessive force and failure to intervene, and retaliation. The Court will exercise supplemental jurisdiction over the Plaintiff's claims against these Defendants for assault and battery and negligence under North Carolina law.

2. The Plaintiff's claims pursuant to FTCA and HIPAA, and against RCDC are **DISMISSED WITH PREJUDICE**.

3. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

4. The Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order. If the Plaintiff fails to so amend his Complaint, the matter will proceed against Sergeant John Doe and the John Doe correctional officers as provided in this Order.

5. Plaintiff's Motion to Appoint Counsel [Doc. 4] is **DENIED**.

6. Plaintiff's Requests for Admissions [Doc. 7] and Request for Production of Documents [Doc. 8] are **DENIED** as premature.

7. Plaintiff's "Motion to Add Certificate in Support of *In Forma Pauperis*" [Doc. 14] is **DENIED** as moot.

8. Plaintiff's Motion [Doc. 15] is **DENIED**.

9. The Clerk of Court is respectfully instructed to mail a blank § 1983 prisoner complaint form, this case's docket sheet, and this Court's Local Rules to the Plaintiff along with a copy of this Order.

**IT IS SO ORDERED.** Signed: September 21, 2021

Martin Reidinger
Chief United States District Judge