# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:21-cv-00048-MR

RONNIE DALE WHITENER,     )
                    )
         Plaintiff,    )   __REDACTED__
                    )   __MEMORANDUM OF__
vs.                  )   __DECISION AND ORDER__
                    )
RUTHERFORD COUNTY DETENTION )
CENTER, et al.,         )
                    )
        Defendants.   )
_____ )

**THIS MATTER** is before the Court on:

1. Defendants John Cooley and Joshua Goodwin's Motion for Summary Judgment [Doc. 58];

2. Defendant John Patterson's Motion for Summary Judgment [Doc. 60];

3. Plaintiff Ronnie Dale Whitener's Motion for Partial Summary Judgment [Doc. 61];

4. Plaintiff's Motions to Revive Defendants [Docs. 63, 81];

5. Defendants Cooley and Goodwin's Motion to Strike Surreply [Doc. 75];

6. Defendant John Patterson's Motion to Strike Surreply [Doc. 77]; and

7. Plaintiff's "Motion to Remove Detainer for the Purpose of Pursuing Medical Treatment and for Other Relief the Court Can Provide Plaintiff Concerning Matters Related to this Case" [Doc. 83].

## I. BACKGROUND

The Plaintiff Ronnie Dale Whitener, who is presently incarcerated in the Tennessee Department of Corrections, filed this pro se action under 42 U.S.C. § 1983 and North Carolina law, addressing incidents that allegedly occurred while he was a pretrial detainee at the Rutherford County Detention Center ("RCDC") in Rutherford County, North Carolina. The Plaintiff seeks a declaratory judgment, compensatory and punitive damages, a jury trial, the costs of this action, and any other relief the Court deems just and proper. [Doc. 1: Complaint at 20-21]. The Plaintiff's verified Complaint passed initial review on claims against Defendants Sergeant John Patterson ("Sergeant Patterson"), Officer John Cooley ("Officer Cooley"), and Officer Joshua Goodwin ("Officer Goodwin")[1] for the imposition of unwanted medical

---

[1] These Defendants were referred to as "'John Doe' RCDC Sargent" and " John Doe' RCDC officer[s]" in the Complaint. [Doc. 1: Complaint at 1].

2

treatment in violation of due process, the use of excessive force and failure to intervene, and retaliation. [Id.; Doc. 16: Order on Initial Review at 10-14]. The Court exercised supplemental jurisdiction over the Plaintiff's claims of assault and battery and negligence under North Carolina law. [Id. at 16-19]. The Court granted the Plaintiff 30 days to amend his Complaint to correct the deficiencies identified in the Order on initial review or to otherwise properly state a claim upon which relief can be granted. [Id. at 23]. It cautioned the Plaintiff that "[p]iecemeal amendment will not be permitted" and, "[s]hould the Plaintiff fail to timely amend his Complaint … the matter will proceed only against" Defendants Patterson, Cooley, and Goodwin on the claims identified in the Order on initial review. [Id. at 24]. The Plaintiff failed to amend the Complaint, and the Defendants were served. [Doc. 35: Executed Summonses].

On July 5, 2022, the Court entered a Pretrial Order and Case Management Plan that set the deadline to amend and join parties as August 18, 2022; the discovery cutoff date as October 27, 2022; and the deadline to file dispositive motions as November 28, 2022. [Doc. 46: Pretrial Order and Case Mgmt. Plan].

In September 2022, after the deadline to amend and add parties had expired the Plaintiff filed Motions seeking leave to amend and for an

extension of time to do so,. [Docs. 48, 51: Motions]. On November 14, 2022, the Court denied the Motions as futile. [Doc. 57: Order].

On November 25, 2022 and February 23, 2023,[2] the Plaintiff filed Motions to "revive" claims against several Defendants that had failed to pass initial review of the Complaint. [Docs. 63, 81: Motions to Revive Defts.]. On February 28, 2023, the Plaintiff filed a "Motion to Remove Detainer…" in which he asks for the Rutherford County detainer to be removed because it has increased his security level in the Tennessee Department of Corrections such that he is unable to obtain medical treatment during his current incarceration in Tennessee. [Doc. 83: Motion to Remove Detainer]. The Defendants have not responded to these Motions, and the time to do so has expired.

The parties have also filed cross-Motions for Summary Judgment. [Doc. 58: Cooley/Goodwin MSJ; Doc. 60: Patterson MSJ; Doc. 61: Plaintiff's Partial MSJ.]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

4

the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 65: Roseboro Order]. The parties filed Responses and supporting materials [Doc. 67: Plaintiff's Patterson Response; Doc. 68: Plaintiff's Cooley/Goodwin Response; Doc. 66: Patterson's Response] and Replies [Doc. 69: Cooley/Goodwin Reply; Doc. 70: Patterson Reply; Doc. 71: Plaintiff's Reply]. The Plaintiff then filed Surreplies [Docs. 73, 74: Plaintiff's Surreplies] which the Defendants have moved to strike [Doc. 75: Cooley/Goodwin Motion to Strike: Doc. 77: Patterson Motion to Strike; see Doc. 78: Plaintiff's Response]. Having been fully briefed, these matters are ripe for disposition.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to

the nonmoving party.  <u>Anderson</u>, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## III.   FACTUAL BACKGROUND

The parties' forecasts of evidence show the following, which is undisputed except as otherwise noted.

In 2016, prior to his incarceration at RCDC, the Plaintiff suffered a fracture in his lower back.  [Doc. 1-3: Complaint Ex at 4 (March 17, 2017

7

Progress Note)]. About a year later, he was found to have "progressive kyphotic deformity in his lower back and upper back" and severe lower back pain. [Doc. 1-3: Complaint Ex at 4 (March 17, 2017 Progress Note)]. In December 2017, he was diagnosed with "evidence of severe kyphotic deformity with positive saggital balance and a focal kyphosis of approximately 30º at L2 [and] … some degree of coronal scoliosis" that was only correctible through surgery. [Doc. 1-3: Complaint Ex at 1 (Dec. 14, 2017 Progress Note)]. The Plaintiff did not receive surgery for this condition. [Doc. 1: Complaint at 16].

The Plaintiff entered RCDC as a pretrial detainee in May 2019. [Doc. 1: Complaint at 5]. On May 18, 2019, the Plaintiff requested medical attention for lower back pain. [Id.]. At around 3:30 p.m., the Plaintiff yelled for Officer Cooley to come over during supervision rounds. [Doc. 59-2: Cooley Decl. at ¶ 2]. Cooley called for the cell door to be opened and stepped inside. [Id.]. The Plaintiff was doubled over, and said that he was having trouble breathing and that his back hurt. [Id.]. Cooley immediately contacted Officer Goodwin and asked him to inform Sergeant Patterson what was happening. [Id. at ¶ 3; Doc. 59-1: Goodwin Decl. at ¶ 3]. Officer Goodwin contacted Sergeant Patterson for advice; Patterson suggested that the officers check the Plaintiff's vitals. [Doc. 59-1: Goodwin Decl. at ¶ 3].

8

Officer Goodwin came back a few minutes later with a "nurse on a stick," which consisted of a thermometer and a blood pressure monitor, to take the Plaintiff's vitals pursuant to the jail nurse's instruction. [Id.]. Despite several attempts, the officers were unable to obtain Plaintiff's vitals because of his "continuous movements." [Doc. 59-2: Cooley Decl. at ¶ 4]. Officer Cooley contacted Sergeant Patterson to let him know they could not get the Plaintiff's blood pressure reading. [Id.].

Sergeant Patterson and Medical Technician Hannon ("Med Tech Hannon")[3] came to the Plaintiff's cell several minutes later to obtain his vitals. [Id. at ¶ 5]. The Plaintiff was balled up on the floor, complaining that his "stomach had a hole in it, and that his spine was hurting and that he couldn't get up or lay flat on his bunk." [Doc. 60-4: Patterson MSJ Ex at 4 (RCSO Use of Force Report)]. Med Tech Hannon was unable to obtain a blood pressure reading despite several attempts. [Id.; Doc. 59-2: Cooley Decl. at ¶ 5; Doc. 59-1: Goodwin Decl. at ¶ 3]. Med Tech Hannon returned to the nurse's station to contact the nurse. [Doc. 59-2: Cooley Decl. at ¶ 5]. Officer Goodwin returned to his station on the first floor. [Doc. 59-1: Goodwin Decl. at ¶ 4].

---

[3] Medical Technician Hannon is not a defendant in this case. [See Doc. 1: Complaint; Doc. 16: Order on Initial Review at 7-10].

9

Med Tech Hannon returned to the cell and advised Sergeant Patterson that the nurse said to give the Plaintiff some "ibu meds," place the Plaintiff on a liquid diet, and have a camera in his cell so that his health could be monitored more closely.[4]  [Doc. 59-2: Cooley Decl. at ¶ 6; Doc. 60-4: Patterson MSJ Ex at 4 (RCSO Use of Force Report)].  The Plaintiff told Med Tech Hannon[5] his "medical condition and his need of medical treatment," and he told Sergeant Patterson that he disagreed with this diagnosis and treatment plan because it had nothing to do with his back pain." [Doc. 1: Complaint at 6].  The Plaintiff asked to be sent to the emergency room for a second opinion "due to the pain and the seriousness of his medical conditions and need of medical treatment," or to be left alone.  [Id.].  The Plaintiff told Sergeant Patterson that he was not moving to a lockdown cell or getting up from his cell floor, and that they "would have to spray and/or tase him."  [Doc. 59-2: Cooley Decl. at ¶ 7; Doc. 60-4: Patterson MSJ Ex at 4 (RCSO Use of Force Report)].  Sergeant Patterson told the Plaintiff that he could not refuse the treatment that medical staff had ordered, and he warned

_____

[4] The Plaintiff alleges "[u]pon information and belief" that the nurse practitioner consulted with a physician who diagnosed the Plaintiff with stomach cramps and prescribed him Tylenol, a liquid diet, and 10 days in segregation for observation.  [Doc. 1: Complaint at 6].

[5] "Nurse Practitioner 'Jane Doe'" in the Complaint.  [Doc. 1: Complaint at 6].

the Plaintiff that he needed to comply.  [Doc. 1: Complaint at 6; Doc. 59-2: Cooley Decl. at ¶ 7].

Sergeant Patterson and Officer Cooley[6] tried to forcibly lift the Plaintiff into a wheelchair, which intensified the Plaintiff's pain; the Plaintiff moaned in pain and the officers put him back down.  [Doc. 1: Complaint at 7].

The Plaintiff repeated his request to go to the emergency room for a second opinion.  [Id.].  Sergeant Patterson warned the Plaintiff again, then sprayed pepper spray in his face because the Plaintiff "denied medical staff's ordered treatment and would not get into the wheelchair to be taken to segregation for observation."  [Id.; Doc. 59-2: Cooley Decl. at ¶ 8; Doc. 59-5: Plaintiff's Interrog. Resp. at 3 (admitting that Officer Cooley told the Plaintiff to "get into the wheelchair;" "you're going to do as asked and told")].  The officers grabbed the Plaintiff's legs and armpits to drag him out of the

---

[6] The Plaintiff's Verified Complaint states that there were two officers—"Officers 'John Doe' and 'John Doe'"—who were present at this incident; however, he later refers to one of these officers as "Sargent [sic] John Doe."  [See Doc. 1: Complaint at 7, 8].  In his responses to interrogatories, the Plaintiff identified the two officers at the scene as Officer Goodwin and Officer Cooley.  [Doc. 59-5: Interrog. Resp. at 2 (responses 2 and 3)].  Officer Goodwin, however, stated in his Declaration that he was not present at the Plaintiff's cell when the Plaintiff was lifted into the wheelchair.  [See Doc. 59-1: Goodwin Decl. at ¶ 4].  The Plaintiff does not appear to dispute this, and now asserts in his summary judgment response that it was Sergeant Patterson who sprayed him.  [Doc. 67 at 4-5, ¶¶ 15-16].

cell; the Plaintiff "brace[d] his legs up against the door jams of the cell," and Patterson pepper sprayed him again.[7]  [Doc. 1: Complaint at 8].

The two officers placed the Plaintiff in a wheelchair and began wheeling him toward segregation.  [Id.].  As the wheelchair passed the pod's stairway, the Plaintiff "reach[ed] out at the post of a staircase inside the pod and pull[ed] himself out of the wheelchair onto the floor where he latch[ed] his arms around the bottom of the post."  [Id.; Doc. 59-2: Cooley Decl. at ¶ 8].  Officer Cooley told the Plaintiff to "let go of the pole."  [Doc. 59-5: Plaintiff's Interrog. Resp. at 3].  The Plaintiff again asked Sergeant Patterson to allow him to either go to the emergency room, or to refuse the medical orders. [Doc. 1: Complaint at 8].  Sergeant Patterson sprayed the Plaintiff's face with pepper spray for several seconds while Officers Goodwin and Cooley pulled his legs in an attempt to remove him from the post; they did not succeed. [Id.; Doc. 59-2: Cooley Decl. at ¶ 9].  Sergeant Patterson then "physically kicked [the Plaintiff] and plac[ed] his booted foot on the Plaintiff's head, neck, and upper back."  [Doc. 1: Complaint at 9].  Sergeant Patterson called on the

---

[7] According to the Defendants, Sergeant Patterson and Officer Cooley "helped" the Plaintiff into the wheelchair; they do not mention a second application of pepper spray in the cell.  [Doc. 59-2: Cooley Decl. at ¶ 8].

radio for staff to bring a taser, which Officer Goodwin brought a few minutes later.[8]  [Doc. 59-2: Cooley Decl. at ¶ 9; Doc. 59-1: Goodwin Decl. at ¶ 5].

The Plaintiff was told to comply or he would be tased. When the Plaintiff continued to refuse, Sergeant Patterson tased him.[9]  [Doc. 59-2: Cooley Decl. at ¶ 9; Doc. 59-1: Goodwin Decl. at ¶¶ 6-7].  The Plaintiff released the post and he was taken to a segregation cell.[10]  [Doc. 1: Complaint at 9; Doc. 59-2: Cooley Decl. at ¶ 10; Doc. 59-1: Goodwin Decl. at ¶ 8].

The Defendants' actions "increased [Plaintiff's] pain and caused [him] emotional stress…"  [Doc. 1: Complaint at 17].  The Plaintiff had no apparent injury after the incident, and he refused treatment. [Doc. 60-4: Patterson MSJ Ex at 3 (RCSO Use of Force Report)]. The Plaintiff was observed walking around his cell, standing up, and taking a shower about 10 minutes after he was placed in the observation cell.  [Doc. 60-4: Patterson MSJ Ex at 4 (RCSO Use of Force Report)].

---

[8] Officer Goodwin explains that he returned with the taser about 30 minutes after having left the Plaintiff's cell and resuming his regular station.  [Doc. 59-1: Goodwin Decl. at ¶ 5].

[9] According to the Plaintiff, Sergeant Patterson tased him without any warning.  [Doc. 1: Complaint at 9].   The Court is not required to accept the Plaintiff's contention that he received no warning in light of the objective video evidence submitted by the Defendants, which depicts Sergeant Patterson calling for the taser while standing a very short distance from the Plaintiff.  See Scott, 550 U.S. at 380.  This demonstrates conclusively that the Plaintiff was, at the very least, aware that Patterson had called for a taser.  As such, he had notice that a taser was going be deployed.

[10] According to the Plaintiff, he was "drug by his legs" into the observation cell.  [Doc. 1: Complaint at 9].

According to the Plaintiff, the Defendants "intentionally den[ied] Plaintiff request for a second opinion" and used "unnecessary and excessive" force as "a form of retaliation" to punish the Plaintiff for rejecting medical orders, and for asking to go to the emergency room or to be left alone. [Doc. 1: Complaint at 16-19].

On June 29, 2019, an investigation of the Plaintiff's use of force complaint concluded as follows:



14



[Doc. 62: Plaintiff's MSJ Ex at 6-7].

███████████████████████████████████████████████████████

███████████████████████ in March 2019. [Id. at 8]. On July 12, 2019,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ [Id. at 9].

The parties have submitted a video file containing footage from the

housing pod that shows the following events:[11]

3:47:46 Partial view of a wheelchair and an officer moving outside of a cell; Plaintiff is placed in the wheelchair and is wheeled through the pod by Sergeant Patterson and Officer Cooley.

3:47:53 As the Plaintiff is wheeled by the stairway, the Plaintiff lunges for the stairway handrail, grabs it, flings himself out of the wheelchair and onto the ground, and grabs onto a stairway post.

3:48:02 The Plaintiff struggles against Sergeant Patterson and Officer Cooley's attempts to lift him from the ground.

---

[11] The Plaintiff requested the video's submission; the Court instructed the Defendants to provide courtesy copies of the video to the Court and to the Plaintiff in light of the Plaintiff's incarcerated status. [See Doc. 72: Plaintiff's "Motion for Instructions;" Doc. 79: Order; Doc. 80: Notice of Conventional Filing].

| 3:48:37 | Sergeant Patterson appears to kick to the Plaintiff's torso; Patterson and Officer Cooley attempt to pull the Plaintiff from the post. |
|---------|---------|
| 3:49:14 | Sergeant Patterson speaks into his radio while standing a short distance from the Plaintiff. |
| 3:50:20 | Officer Goodwin arrives, and hands Patterson a taser. |
| 3:50:45 | All three officers attempt to remove the Plaintiff from the post. |
| 3:50:51 | Sergeant Patterson administers the taser. |
| 3:50:56 | The Plaintiff is removed from the stairway post and is carried away. |

## IV. DISCUSSION

### A. Pending Motions

Before addressing the parties' Motions for Summary Judgment, the Court will first address the parties' outstanding motions.

#### 1. Motions to Revive Defendants

In his November 25, 2022 and February 20, 2023 Motions to Revive Defendants, the Plaintiff asks the Court to allow him to assert claims against RCDC, Sheriff Francis, Med Tech Hannon, and "others … in the control center" because discovery materials support claims for supervisory liability, deliberate indifference to a serious medical need, and failure to intervene. [Docs. 63, 81: Motions to Revive Defts.].

The Plaintiff filed his first Motion to Revive at the same time he filed his Motion for Partial Summary Judgment, just three days before the deadline to file dispositive motions expired, and it was docketed after the Defendants filed their Motions for Summary Judgment. The second Motion to Revive was filed nearly three months after the parties filed their Motions for Summary Judgment.

The Plaintiff had repeated opportunities to properly file a timely superseding Amended Complaint but failed to do so. He again attempts to amend in a piecemeal fashion without submitting a proposed Amended Complaint. [See Docs. 16, 57: Orders]. He has also failed to adequately justify amending at this late juncture. His Motions to Revive are, therefore, denied.

### 2. Motions to Strike Surreply

The Defendants have filed Motions to Strike [Docs. 75, 77] because the Plaintiff's Surreplies [Docs. 73, 74] are not permitted under the Court's Local Civil Rules. The Plaintiff argues that his Surreply to Defendant Patterson's Reply should be accepted because he filed it to address Defendant Patterson's "blatant mischaracterizations and misstatements of facts…." [Doc. 78: Plaintiff's Resp. at 1].

17

Surreplies "are neither anticipated nor allowed" by the Court's Local Civil Rules, "but leave of Court may be sought to file a surreply when warranted." LCvR 7.1(e). "Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply." DiPaulo v. Potter, 733 F.Supp.2d 666, 670 (M.D.N.C. 2010); see, e.g., Johnson v. Allen, 416 F.Supp.3d 550, 564 (E.D.N.C. 2018) (finding that leave to file a surreply was not warranted where the court did not rely on new material raised in the reply to reach its decision).

The Court finds that fairness does not dictate that the Plaintiff be permitted to file Surreplies. The Defendants did not raise any new arguments in their Replies, and the Court is more than capable of discerning the positions of the parties from the briefs that have already been filed. The Defendants' Motions to Strike will, therefore, be granted.[12]

### 3. Motion to Remove Detainer

The Plaintiff also asks the Court to remove a Rutherford County detainer so that he may obtain medical care during his incarceration in the Tennessee Department of Corrections. [Doc. 83: Motion to Remove Detainer]. "[W]hen a state prisoner is challenging the very fact or duration of

---

[12] Even if the Court were to consider the Plaintiff's Surreplies, they would not alter the outcome of the case.

his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see generally 28 U.S.C. § 2241; Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 489 (1973).[13]  The removal or alteration of a detainer is not cognizable in this § 1983 action, and therefore, the Plaintiff's motion is denied.

### B.    Plaintiff's Motion for Partial Summary Judgment

The Plaintiff seeks summary judgment against Sergeant Patterson for his claims regarding the use of excessive force, retaliation, assault and battery, and negligence.[14]   For grounds, the Plaintiff argues that

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[13] The Court makes no determinations about the potential merit or procedural viability of such an action.

[14] The Plaintiff does not seek summary judgment on the due process claim for unwanted medical care, or for failure to intervene.  [Doc. 61: Plaintiff's MSJ at 2].

██████████████████████████████████████████████████████

██████████████████████████████████████ [Doc. 61: Plaintiff's MSJ].

The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to his excessive force and retaliation claims. A policy violation does not rise to the level of a § 1983 claim absent a plausible allegation of an underlying constitutional violation. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

Here,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

The Plaintiff's reliance on ████████████████████████████████████ is also unavailing. The Federal Rules of Evidence bar parties from introducing evidence of any prior bad act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Thus, '[w]hile parties may dig into a witness's prior acts for the purpose of establishing his character for truthfulness or untruthfulness," it is improper to use a witness's prior conduct to draw an inference that he acted improperly on another occasion. McMichael v. James Island Charter Sch., 840 F. App'x 723, 732 (4th Cir. 2020) (citing Fed. R. Evid. 608(b)). The Plaintiff's argument that Sergeant Patterson used excessive force in conformity with ███████████████████████████████████ is a "textbook example of inadmissible 'other acts' evidence" that the Federal Rules of Evidence prohibit. Id.; see Md. Highways Contractors Ass'n v. Md., 933 F.2d 1246, 1251 (4th Cir. 1991) ("evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"). The forecast of evidence demonstrates that Sergeant Patterson's use of force was not objectively unreasonable. See Sections (b)(ii), (iv), infra. Moreover, the Plaintiff's retaliation claim is conclusory, and it is not supported by the

forecast of evidence.  See Section (b)(iii), (iv), *infra*.  Further, the Plaintiff has not demonstrated that he should be granted summary judgment on his North Carolina assault and battery and negligence claims.  See Section (b)(v), *infra*.  The Plaintiff's Motion for Partial Summary Judgment is, therefore, denied.

### C.    Defendants' Motions for Summary Judgment

#### 1.    Due Process

The Plaintiff asserts due process claims against Sergeant Patterson, Officer Cooley, and Officer Goodwin for forcing him to undergo unwanted medical treatment.

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law."  U.S. Const. Amend XIV.  The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action.  Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988).

"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990). This liberty interest survives conviction and

incarceration.  King v. Rubenstein, 825 F.3d 206, 222 (4th Cir. 2016); see Washington v. Harper, 494 U.S. 210, 221–22 (1990) (recognizing an individual's "significant liberty interest in avoiding the unwanted administration" of a specific form of medical treatment); Hogan v. Carter, 85 F.3d 1113, 1116 (4th Cir. 1996) (en banc) (citing Harper, 494 U.S. 221–22). In this context, prison officials may override this right when treatment is "reasonably related to legitimate penological interests." Harper, 494 U.S. at 223 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  "This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review."  Id. (citation omitted).

Here, the forecast of evidence demonstrates that the Plaintiff complained of difficulty breathing, back pain, and stomach pain; that several attempts to obtain Plaintiff's vitals were unsuccessful; that medical staff instructed that a camera be placed in the Plaintiff's cell, that he receive medication, and that he be placed on a liquid diet; and that the Defendants moved the Plaintiff to an observation cell pursuant to medical staff's instruction.  [See Doc. 59-2: Cooley Decl. at ¶ 6; Doc. 60-4: Patterson MSJ Ex at 4 (RCSO Use of Force Report)].  The simple act of moving the Plaintiff to an observation cell so that medical staff could more easily observe the

23

Plaintiff does not qualify as a forced medical procedure.  See Morris v. Pompeo, __ F.Supp.3d __, 2020 WL 6875208 (D. Nev. Nov. 23, 2020) ("no forced medical procedure [was] at issue" where the State Department required a doctor's certificate of gender to support a passport application).

Even if the cell transfer could be considered unwanted medical treatment, the Defendants were merely carrying out medical staff's instructions.  See Anglin v. City of Aspen, 562 F.Supp.2d 1304, 1318 (D. Col. May 1, 2008) ("A reasonable law enforcement officer, as a non-medical professional, cannot be expected to question the judgment of a qualified medical professional absent some extraordinary circumstance.").  Requiring the Plaintiff to move to an observation cell pursuant to medical staff's instruction was rationally related to the RCDC's legitimate interests.  See generally Harper, 494 U.S. at 223; Turner, 482 U.S. at 89-90; see also Sullivan v. Bornemann, 384 F.3d 372 (7th Cir. 2004) (finding no constitutional violation where police officers helped restrain an arrestee for a catheterization procedure at the request of a nurse; the state's substantial interest in assuring the arrestee's medical stability outweighed his right to refuse the unwanted medical treatment).  The Plaintiff has failed to present a forecast of evidence from which a reasonable jury could find that any of the Defendants violated the Plaintiff's due process rights with regard to

receiving unwanted medical treatment. Accordingly, the Defendants'
Motions for Summary Judgment on this claim are granted.

### 2. Excessive Force

The Plaintiff claims that Sergeant Patterson used excessive force
during the incident; that Officers Cooley and Goodwin failed to intervene; and
that the Defendants' actions were intended as punishment. [Doc. 1:
Complaint at 16-19].

The Fourteenth Amendment "protects a pretrial detainee from the use
of excessive force that amounts to punishment." Graham v. Connor, 490
U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial
detainee must show only that the force "purposely or knowingly used against
him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389
(2015). The standard for assessing a pretrial detainee's excessive force
claim is "solely an objective one." Id. This inquiry "requires careful attention
to the facts and circumstances of each particular case." Graham, 490 U.S.
at 396. Those circumstances include "the relationship between the need for
the use of force and the amount of force used; the extent of the plaintiff's
injury; any effort made by the officer to temper or to limit the amount of force;
the severity of the security problem at issue; the threat reasonably perceived
by the officer; and whether the plaintiff was actively resisting." Kingsley, 576

U.S. at 397. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The undisputed forecast of evidence, including the jail video footage, demonstrates that the Defendant officers used physical force only after the Plaintiff verbally and physically resisted their repeated commands to comply with medical staff's orders. [Doc. 59-5: Interrog. Resp. at 2 (responses 2 and 3) (officers "made physical contact [with the Plaintiff] after [Plaintiff] refused medical…."]. The Defendants were only able to remove the Plaintiff from the cell and place him into a wheelchair by using hands-on force and pepper

spray. Outside the cell, the Plaintiff flung himself out of the wheelchair and clung to a stairway post despite officers' repeated verbal and physical efforts to remove him. The Plaintiff's refusal and resistance continued until Sergeant Patterson stunned the Plaintiff with a taser. While the Plaintiff claims that he experienced pain during the incident, the forecast of evidence demonstrates that the Plaintiff sustained no physical injuries, that he refused medical treatment following the incident, and that he was seen walking around and showering about ten minutes after the incident. [Doc. 60-4: Patterson MSJ Ex at 4 (RCSO Use of Force Report)]. It was objectively reasonable for the Defendants to enforce the Plaintiff's compliance with medical staff's order for camera observation, and to respond to his repeated verbal refusal and physical resistance with appropriate force. See Sullivan, 384 F.3d 377 (police officers did not use excessive force in violation of the Fourth Amendment by helping to restrain an arrestee for catheterization) Grayson, 195 F.3d at 697 (detention center officers did not use excessive force by pepper spraying him and using a five-man extraction team where such was necessitated by the detainee's belligerent behavior). It was also reasonable for the Defendants to use force in response to the Plaintiff's resistance at the pod's stairway. See Kingsley, 576 U.S. at 400 (courts must account for the government's legitimate interests in managing the facility,

27

"appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security") (internal quotations omitted).

As the use of force was objectively reasonable, the Plaintiff's claims for failure to intervene necessarily fail. See Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 420-21 (4th Cir. 1996) (concluding that claims derivative of excessive force claim were mooted by jury's verdict finding no excessive force). The Defendants' Motions for Summary Judgment are, therefore, granted on the Plaintiff's claims for the use of excessive force and failure to intervene.

### 3. Retaliation

The Plaintiff claims that the Defendants' actions were intended to punish him, and were "a form of retaliation" for the Plaintiff's rejection of medical orders and his requests to either go to the emergency room or to be left alone. [Doc. 1: Complaint at 16-19].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for

exercising a constitutional right.  See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978).  In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct."  Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citing Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017); quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)).

The same-decision test applies to determining the causation element of a prisoner's retaliation claim.  Id.  Once the prisoner-plaintiff shows that his "protected conduct was a substantial motivating factor in a prison guard's decision to take adverse action," the burden then shifts to the defendant to prove a permissible basis for taking that action.  Id. at 300.  Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim.  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).  In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Id.

Here, the forecast of evidence demonstrates that the Plaintiff refused to comply with correctional staff's orders before any physical force was used, and that the amount of force that was applied increased as the level of his resistance escalated.  See Section (b)(ii), *supra*.  The forecast of evidence satisfies the same-decision test because it establishes that the Defendants' use of force directly responded to the Plaintiff's verbal and physical resistance.  Adams, 40 F.3d at 74;  [see Doc. 59-5: Interrog. Resp. at 2].  The Plaintiff has failed to forecast any evidence to the contrary.  Accordingly, no genuine dispute of material fact exists and the Defendants' Motions for Summary Judgment are granted on the Plaintiff's retaliation claims.

### 4.    Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful."  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation."  E.W.

ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted).   The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that the Defendants violated any constitutional right, the Defendants are also entitled to summary judgment on the grounds of qualified immunity.   Therefore, the Court grants summary judgment for the Defendants on this basis as well.

### 5.   North Carolina Claims

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina claims for assault and battery, and negligence. [Doc. 16: Order on Initial Review at 16-20].

The Plaintiff's North Carolina assault and battery claims are subsumed within his federal excessive force claims and therefore are dismissed as well. See generally Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994); see, e.g., Connor v. Thompson, 647 F. App'x 231 (4th Cir. 2016).

As to the Plaintiff's negligence claims, there is no forecast of evidence that Defendants Cooley and Goodwin's actions were corrupt, malicious, or

outside and beyond the scope of their duties.  <u>See Shaw v. Stround</u>, 13 F.3d 791, 803 (4th Cir. 1994) ("A public officer performing discretionary acts … is absolutely immune from mere negligence claims) (citing <u>Hare v. Butler</u>, 99 N.C. App. 693, 394 S.E.2d 231 (1990)).  Therefore, the negligence claims as to Officers Cooley and Goodwin are dismissed based on public official immunity.  As to Sergeant Patterson, the Plaintiff has forecast evidence that he violated RCDC policy, which calls into question whether he acted outside the scope of his duties. Defendant Patterson's Motion for Summary Judgment on the Plaintiff's negligence claim is, therefore, denied. However, the Court declines to maintain supplemental jurisdiction over the Plaintiff's negligence against Defendant Patterson, as all of the federal claims have been dismissed. 28 U.S.C. § 1367(c)(3).  The Court will, therefore, dismiss the Plaintiff's negligence claim against Defendant Patterson without prejudice to raising it in state court.

## V.    CONCLUSION

For the reasons stated herein, the Court grants the Defendants' Motions for Summary Judgment and denies the Plaintiff's Motion for Partial Summary Judgment.  This action is dismissed with prejudice except for the negligence claim against Defendant Patterson, which is dismissed without prejudice to raising it in state court.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants John Cooley and Joshua Goodwin's Motion for Summary Judgment [Doc. 58] is **GRANTED**.

2. Defendant John Patterson's Motion for Summary Judgment [Doc. 60] is **GRANTED** as described in this Order.

3. Plaintiff Ronnie Dale Whitener's Motion for Partial Summary Judgment [Doc. 61] is **DENIED**.

4. This action is **DISMISSED WITH PREJUDICE** except for the Plaintiff's negligence claim against Defendant Patterson, which is **DISMISSED WITHOUT PREJUDICE**.

5. The Plaintiff's Motions to Revive Defendants [Doc. 63, 81] are **DENIED**.

6. The Defendants' Motions to Strike Surreplies [Docs. 75, 77] are **GRANTED** and the Plaintiff Surreplies [Docs. 73, 74] are **STRICKEN**.

7. The Plaintiff's "Motion to Remove Detainer for the Purpose of Pursuing Medical Treatment and for Other Relief the Court Can Provide Plaintiff Concerning Matters Related to this Case" [Doc. 83] is **DENIED**.

The Clerk is respectfully instructed to mail the Plaintiff a blank § 2241 form, along with a copy of this Order, and to close this case.

**IT IS SO ORDERED.**

Signed: August 31, 2023

Martin Reidinger
Chief United States District Judge